UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
SANDRA LYKES f/k/a SANDRA RIVERA,

                Plaintiff,

                                                    Index No.:_____

    -against-

PALMCO ENERGY PA, LLC a/k/a COLUMBIA
UTILITIES LLC,                                        COMPLAINT
                                                                (Trial by Jury Demanded)

                Defendants.
------------------------------------------------------------------X

       Plaintiff SANDRA LYKES f/k/a SANDRA RIVERA ("Plaintiff" or "Ms. Lykes"), by her attorneys, The Law Offices of Daniel Felber, complaining of defendant PALMCO ENERGY LLC a/k/a COLUMBIA UTILITIES LLC ("PALMCO" or Defendants), alleges as follows:

## NATURE OF THE ACTION

    1. This is an action by an employee against her former employer for damages she sustained as a result of her former employer's violations of Title VII of the Civil Rights Act of 1964, pursuant to 42 U.S.C. § 2000e, et seq., New York State's Human Rights Law, NYS Exec. Law § 296, et seq., and New York City's Human Rights Law, NYC Administrative Code § 8-107, et seq.

1

## PARTIES

2. Plaintiff is a citizen and resident of the State of New York, and resides in Richmond County, New York.

3. Defendant Palmco is and was, at all times relevant herein, a domestic limited liability companies duly authorized to transact business in the State of New York, with their principal place of business located at 1350 60th Street, Brooklyn, New York

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1357, in that Plaintiff is asserting claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq*. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

5. Venue in the Eastern District of New York is appropriate pursuant to 28 U.S.C. § 1391(b), in that a substantial part of the events giving rise to Plaintiff's claims occurred within the Eastern District of New York.

6. Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on or about July 8, 2014 alleging the unlawful discrimination against Defendant Palmco, Premier Solutions of NY, Inc. ("Premier") and James David ("David").

7. The EEOC, in turn, separated Plaintiff's EEOC complaint into two separate charges; one against Defendant Palmco ("Charge 1") and one against Premier and David ("Charge 2").

8. The EEOC provided Plaintiff with a "Right to Sue" letter, dated March 31, 2015 with respect to Charge 1.

2

9. On June 16, 2015, the EEOC filed a written Determination, finding reasonable cause to believe that Premier and David violated Plaintiff's Title VII rights and granted Premier and David until July 6, 2015 to agree to conciliation in the EEOC.

10. Plaintiff is constrained to commence the instant action against Palmco under Charge 1 as Plaintiff's 90 day Right to Sue will expire on or about June 29, 2015.

11. In the event that Premier and David do not agree to conciliation in the EEOC, Plaintiff will seek to amend the instant complaint after the EEOC issues a Right to Sue Letter with respect to Charge 2, by adding Premier and David at that time.

## STATEMENT OF FACTS

12. Palmco is an energy service company or third-party supplier of energy.

13. Robert Palmese ("Palmese") is Palmco's Chief Executive Officer.

14. Premier, as its website avers, is the exclusive marketing company for Palmco, using telemarketing and door-to-door sales' channels to sell Palmco's products and services.

15. On February 15, 2013, Plaintiff was hired as a corporate recruiter for Premier and as a human resources manager for Palmco.

16. Plaintiff's wages were alternately paid by Premier, Palmco, or were subsidized by Palmco but paid through Premier.

17. At all relevant times, James David ("David") was the Chief Operating Officer of Premier and Palmco.

18. At all times during Plaintiff's employment she reported to David.

19. At all times during Plaintiff's employment she also reported to Robert Palmese, the President of Palmco; to Michael Larsen, Premier's Chief Executive Officer; and to Scott Tierney, Premier's President.

20. In the Fall of 2013, David began subjecting Plaintiff to sexual harassment.

21. The harassment included, but was not limited to, unwanted touching, sexually charged comments regarding Plaintiff's physique and appearance, and relentless requests for sex.

22. Beginning in the Winter of 2013-2014, David's sexual harassment of Plaintiff became more aggressive.

23. David called Plaintiff frequently and at all hours of the day and night, repeatedly pressuring Plaintiff to have sexual relations with him.

24. Plaintiff repeatedly asked David to stop the harassment.

25. Undeterred, David sent text messages to Plaintiff, some as late as three and four o'clock in the morning, about personal matters.

26. In March 2014, David texted Plaintiff: "I want to sleep in your bed".

27. In response, Plaintiff complained about David's harassment to Michael Larsen.

28. Upon information and belief, no employment action was taken to stop David's sexual harassment of Plaintiff, and it continued unabated.

4

29. Shortly after Plaintiff received David's text seeking to sleep with her, David cornered Plaintiff by the office copier and proclaimed that he "wanted to pop [her] titties". He further told Plaintiff: "I want to bite [your breasts]. I'm serious Sandra, I want to bite them."

30. Plaintiff demanded that David cease his harassment, to no avail.

31. Senior management, rather than halt the harassment, actively encouraged it.

32. On or about March 10, 2014 Plaintiff complained to Palmese about David's sexual harassment.

33. Palmese's response was to urge Plaintiff to continue to work with David, stating in an email, "Please work your best with James [David] and get some very good sales pumping from these offices."

34. When Plaintiff travelled to Maryland with David on a business trip, Michael Larsen booked only one hotel room. When Plaintiff informed Larsen that she refused to share a room with David, Larsen laughed and then reluctantly booked another hotel room for Plaintiff.

35. On a second occasion in April 2014, Larsen again only booked one hotel room for David and Plaintiff, but this time refused to book a second room.

36. Plaintiff was forced to drive through the night after a long work day in order to return home.

37. In April 2014 Plaintiff attended a sales strategy meeting attended by Michael Larsen, Scott Tierney and David.

38. During the meeting David remarked that in order for Plaintiff to increase sales she should "put [her] booty shorts on and work that corner", inferring the actions of a street prostitute.

39. When Plaintiff objected to David's comment, Larsen responded: "Hey, but pretty girls get business."

40. Plaintiff again complained to Palmese, Larsen and Tierney that she was being victimized due to her sex.

41. On May 6, 2014, Plaintiff's then fiancé Sean Lykes was lawfully in the offices of Premier at 648 Bay Street, 2d Floor, Staten Island, New York.

42. Lykes met David in his office and requested that David cease his sexual harassment of Plaintiff.

43. In response, David repeatedly punched, choked and kicked Lykes, and then threw him down a flight of stairs, causing grievous bodily injury to Plaintiff, and requiring him to be removed by ambulance to Staten Island University Hospital.

44. David was arrested for assaulting Sean Lykes and his prosecution is pending in Richmond County.

45. Plaintiff complained to the Defendant that David's assault on Lykes was in retaliation for Plaintiff's complaints of sexual harassment.

6

46. On May 12, 2014 – a mere six days after David's attack on Lykes – Plaintiff's employment was terminated.

47. Upon information and belief, David continues to remain employed by Premier and Palmco.

48. Defendant Palmco is a joint employer, together with Premier, for the purposes of this action.

41. Under NYLL § 190(3), an employer "includes any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."

42. Courts in this jurisdiction have applied tests of "economic reality" and "functional control" of workers to determine whether a particular defendant can be held liable as an employer despite the defendant's lack of formal control over the workers.

43. The "economic reality" and "functional control" tests permit several persons or entities to be held jointly and severally liable as "employers" for the purpose of Title VII. These tests take into account the real economic relationship between the employer who uses and benefits from the services of workers and the party that hires or assigns the workers to that employer.

44. Non-dispositive factors considered by courts in analyzing the economic reality of an employment situation include whether the alleged employer (i) had the power to hire and fire the employees, (ii) supervised and controlled the employees' work schedules or conditions of employment, (iii) determined the rate and method of payment, and (iv) maintained employment records.

45. Additional non-dispositive factors considered by courts in analyzing the functional control of an employment situation include (i) whether a defendant's premises and equipment are used for the plaintiffs' work, (ii) whether the defendants had a business that could or did shift as a unit from one putative joint employer to another, (iii) the extent to which plaintiffs performed a discrete line-job that is integral to a defendant's process of production, (iv) whether responsibility under the contracts could pass from one subcontractor to another without material changes, (v) the degree to which defendants or their agents supervised the plaintiffs' work, and (vi) whether the plaintiffs worked exclusively or predominantly for the defendants.

46. In addition, courts in this jurisdiction hold two nominally separate entities liable as a "single employer" when they are part of a single integrated enterprise. Non-dispositive factors considered by courts analyzing the existence of an integrated enterprise include (i) interrelation of operations, (ii) centralized control of labor relations, (iii) common management, and (iv) common ownership or financial control.

47. Finally, the individual owners, officers, and directors of entity employers are personally liable jointly and severally with the entity employer which has formal control over the employees if those individuals owners', officers', and directors' role within the company, and the decisions that their role entails, directly affect the nature or conditions of the employees' employment, and if it does so to such a degree that it is logical to find those owners, officers, and directors liable to the employees.

48. At all relevant times, Premier and Palmco qualified as employers of the Plaintiff to the extent that each directly employed Plaintiff; had complete interrelation of operations; had common

management, ownership and financial control; had formal control over the work Plaintiff performed; and had formal control over her employment status.

49. Acting together with Premier, Defendant hired, compensated, supervised and terminated Plaintiff.

## FIRST CAUSE OF ACTION
### (Sex Discrimination under Title VII)

50. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 49, above, with the same force and effect as if fully set forth herein.

51. Defendants discriminated against Plaintiff on the basis of her sex by subjecting Plaintiff to a hostile work environment based on her sex in violation of 42 U.S.C. § 2000e, *et seq*.

52. David's unwelcome sexual advances created an intimidating, hostile and offensive working environment that interfered with the Plaintiff's work performance.

53. David's conduct was severe and pervasive and created a work environment that was objectively and subjectively intimidating, hostile, abusive and offensive.

54. At all relevant times, David, Premier and Defendant's Chief Operating Officer (Palmese), had the authority to make personnel decisions.

55. Defendant knew about David's conduct and failed to exercise reasonable care to prevent and correct his behavior.

56. The Defendant's conduct was intentional, malicious and in reckless disregard of Plaintiff's protected rights under Title VII.

57. As a result of the Defendant's discrimination against the Plaintiff, Plaintiff has sustained injury to her career and suffered stress and economic damages and other injury.

58. By reason of the foregoing, the Defendant has violated Title VII of the Civil Rights Act, and Plaintiff is entitled to economic damages in an amount to be determined at trial; compensatory damages in the amount to be determined at trial; punitive damages in the amount to be determined at trial; and attorneys' and expert fees and costs in an amount not presently capable of ascertainment.

## SECOND CAUSE OF ACTION
(Retaliation under Title VII)

59. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 58, above, with the same force and effect as if fully set forth herein.

60. Plaintiff repeatedly objected to David's physical and verbal advances and inappropriate sexual comments. Following, plaintiff's objections, David subjected Plaintiff to further harassment.

61. Plaintiff complained to Defendants Palmese, Larsen and Tierney that she was being victimized due to her sex.

62. Immediately following the Plaintiff's complaint of sexual harassment, Defendant retaliated against the Plaintiff by terminating her employment without cause.

63. Defendant's retaliation against Plaintiff violates Plaintiff's federally protected rights under Title VII.

64. Defendant's conduct was intentional, malicious and in reckless disregard of Plaintiff's protected rights under the federal civil rights laws.

65. As a result of Defendant's retaliation against Plaintiffs, Plaintiff has sustained injury to her career and has suffered stress and economic damages and other injury.

66. By reason of the foregoing, Defendant has violated Title VII of the Civil Rights Act and Plaintiff is entitled to economic damages in an amount to be determined at trial; compensatory damages in the amount to be determined at trial; punitive damages in the amount to be determined at trial; and attorneys' and expert fees and costs in an amount not presently capable of ascertainment.

**THIRD CAUSE OF ACTION**
**(Discrimination under New York Human Rights Law)**

67. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 66, above, with the same force and effect as if fully set forth herein.

68. Defendant discriminated against Plaintiff on the basis of her sex by subjecting Plaintiff to a hostile work environment based on her sex in violation of NY Exec § 296, *et seq*.

69. Executive Law §291 provides, in pertinent part, that "the opportunity to obtain employment without discrimination because of race, sex or national origin is hereby recognized and declared to be a civil right."

70. The hostile work environment created by Defendant was sufficiently severe and pervasive so as to detrimentally alter the terms, conditions and privileges of Plaintiff's employment.

71. Defendant, at all relevant times, had the authority to make personnel decisions.

11

72. The Defendant is liable for the sexual harassment and hostile work environment because it had knowledge of the discrimination and qualifies as an "employer" under NYSHRL § 296(1)(a).

73. As a result of Defendant's discrimination against Plaintiff, Plaintiff has sustained injury to her career and reputation, has suffered stress and economic damages and other injury.

74. By reason of the foregoing, Defendant has violated Article 15 of the New York State Executive Law, specifically Executive Law §§ 290 et seq., 296 and 297 and Plaintiff is entitled to the following relief: economic damages in an amount to be determined at trial; and compensatory damages in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
### (Retaliation under New York State Human Rights Law)

75. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 74, above, with the same force and effect as if fully set forth herein.

76. Defendant discriminated against Plaintiff on the basis of her sex by subjecting Plaintiff to a hostile work environment based on her sex in violation of NY Exec § 296, *et seq*.

77. Plaintiff repeatedly objected to David's physical and verbal advances and inappropriate sexual comments. Following, Plaintiff's objections, David subjected Plaintiff to further harassment.

78. Plaintiff complained to Defendant, Palmese, Larsen and Tierney that she was being victimized due to her sex.

79. Immediately following the Plaintiff's complaint of sexual harassment, Defendant retaliated against the Plaintiff by terminating her employment without cause.

80. The Defendant participated in the conduct giving rise to Plaintiff's retaliation claim.

81. Defendant's retaliatory conduct violates the New York State Human Rights Law.

82. As a result of Defendant's retaliation, Plaintiff has sustained injury to her career and reputation, has suffered stress and economic damages and other injury.

83. By reason of the foregoing, Defendant has violated the New York State Human Rights laws and Plaintiff is entitled to the following relief: economic damages in an amount to be determined at trial; and compensatory damages in an amount to be determined at trial.

### FIFTH CAUSE OF ACTION
### (Discrimination under the N.Y.C. Admin. Code)

84. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 83, above, with the same force and effect as if fully set forth herein.

85. Defendant illegally discriminated against Plaintiff due to her sex by conditioning her employment upon unwanted sexual relations with her employer and by creating a hostile work environment based upon Plaintiff's sex in violation of N.Y.C. Admin. Code Sections 8-107(1)).

86. The hostile work environment created by Defendant was sufficiently severe and pervasive so as to detrimentally alter the terms, conditions and privileges of Plaintiff's employment.

87. David made repeated and continuous unwelcome sexual advances upon the Plaintiff.

88. New York City's Human Rights Law imposes strict liability for an employer sued for the sexual harassment of its supervisors.

89. Defendant's conduct was intentional, malicious and otherwise in reckless disregard of Plaintiff's protected rights in violation of the New York City Human Rights Laws, N.Y.C. Admin. Code Sections 8-107(1), 8-107(2) and 8-107(3).

90. As a result of Defendant's discrimination against Plaintiff, Plaintiff has sustained injury to her career and reputation and has suffered economic and emotional injuries.

91. By reason of the foregoing Plaintiff is entitled to the following: economic damages in an amount to be determined at trial; and compensatory damages in an amount to be determined at trial; punitive damages in an amount to be determined at trial; and attorneys' and expert fees and costs in an amount not presently capable of ascertainment.

### SIXTH CAUSE OF ACTION
### (Retaliation under the N.Y.C. Admin. Code)

92. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 91, above, with the same force and effect as if fully set forth herein.

93. Defendant retaliated against Plaintiff on the basis of her protected complaints of discrimination in violation of N.Y.C. Admin. Code Sections 8-107(7).

94. Plaintiff repeatedly objected to David's physical and verbal advances and inappropriate sexual comments. Following, Plaintiff's objections, David subjected Plaintiff to further harassment.

95. Plaintiff complained to Defendant, Palmese, Larsen and Tierney that she was being victimized due to her sex.

96. Following the Plaintiff's complaint of sexual harassment, Defendant retaliated against the Plaintiff by terminating her employment without cause.

97. Defendant's conduct was intentional, malicious and otherwise in reckless disregard of Plaintiff's protected rights in violation of the New York City Human Rights Laws, N.Y.C. Admin. Code Sections 8-107(1), 8-107(2) and 8-107(3).

98. As a result of Defendant's discrimination against Plaintiff, Plaintiff has sustained injury to her career and reputation and has suffered economic and emotional injuries.

99. By reason of the foregoing Plaintiff is entitled to the following: economic damages in an amount to be determined at trial; compensatory damages in an amount to be determined at trial; punitive damages in an amount to be determined at trial; and attorneys' and expert fees and costs in an amount not presently capable of ascertainment.

**WHEREFORE**, based on the foregoing, Plaintiff respectfully requests that this Court enter judgment against Defendants awarding Plaintiff:

On the FIRST CAUSE OF ACTION, Plaintiff is entitled to economic and compensatory damages plus interest in an amount to be determined at trial, in addition to reasonable costs, attorneys' fees and punitive damages;

On the SECOND CAUSE OF ACTION, Plaintiff is entitled to economic and compensatory damages plus interest in an amount to be determined at trial, in addition to reasonable costs, attorneys' fees and punitive damages;

On the THIRD CAUSE OF ACTION, Plaintiff is entitled to compensatory and consequential damages and interest in an amount to be determined at trial;

On the FOURTH CAUSE OF ACTION, Plaintiff is entitled to compensatory and consequential damages and interest in an amount to be determined at trial;

On the FIFTH CAUSE OF ACTION, Plaintiff is entitled to economic and compensatory damages plus interest in an amount to be determined at trial, in addition to reasonable costs, attorneys' fees and punitive damages;

On the SIXTH CAUSE OF ACTION, Plaintiff is entitled to economic and compensatory damages plus interest in an amount to be determined at trial, in addition to reasonable costs, attorneys' fees and punitive damages;

Dated: New York, New York
June 28, 2015

THE LAW OFFICES OF DANIEL FELBER

By: _____
Daniel M. Felber (DF-3027)
100 Park Avenue, Suite 1600
New York, New York 10017
Tel: 212-425-4250
Fax: 212-880-6499
*Counsel for Plaintiff Sandra Lykes f/k/a Sandra Rivera*